Please watch your clock and if you want to save time for rebuttal. Thank you. May it please the court, I'm James Laughlin and I represent the appellant Jesus Martinez and I will reserve time for rebuttal and watch my time. When the government seeks to use evidences during warrantless searches to convict someone of a crime, it carries a heavy burden to prove that either one of the limited exceptions to the 4th Amendment warrant requirement applies or that one of the few exceptions to the exclusionary rule applies. The government didn't meet that burden here and it shouldn't be given another chance to do so. There were two officers at the scene of this event and the government presented nothing from Officer Quintero, the person who made the key observations and seized the key evidence. It chose instead to rely entirely on a police report, declaration, and body camera video for Officer Keeble, who only had limited information about the event. So I want to start with a premise that any deficiencies of the record are the responsibility of the government and they should bear the consequences of them. With that in mind, I'd like to start with the only ruling made by the district court, which is that the officers reasonably believe that Mr. Martinez was armed and dangerous. In the end, however, that really shouldn't matter for two reasons. First, the government on appeal has abandoned the claim they made below, rightfully so, I believe, that the search for weapons could have extended into the car. Do you think they've abandoned that? And why do you think they're right about that? I was curious. I noticed that that was their main argument in the district court and they're not making it here. Yeah, well, yes, I certainly think they've abandoned it. They've waived it under the rule that if you don't put in your brief, it's waived. And I think the reason is the reason I pointed out in my brief. Between Michigan v. Long and Arizona v. Gantt, once Mr. Martinez was seized and under the control of an officer elsewhere... Well, yes, but what about the beginning, when they first opened the door and started looking in the car? Well, I can't speak to why they didn't decide to make alternative arguments, but I think it's... But later, once he was out of there, I understand. Right, I will say that they do say later on in their brief, they suggest that the seizure of the items happened earlier than I think they did, at least based on this record they did. If the court watches the video, you'll see that we can see in the background Officer Quintero fiddling in the passenger compartment as Mr. Martinez has been pulled out of the car. But the only evidence in the record is the report written by Officer Keeble later that says that after we secured him and I patted him down, then Officer Quintero went back and finished his probable cause search for weapons, and that's when he found the key evidence at issue here. But in some fashion, I think when pointing or something, he did... Quintero did communicate to Keeble that he thought either there was or he thought there was a gun in the car. Yes, I think what the evidence is is that, and this is again, we don't have Officer Quintero's direct account, we only have what Keeble recounted later, is that he indicated there might be a gun because he saw, A, an empty holster on the side of Mr. Martinez, and A, what he said he could identify as a bullet. But we don't know how or what Quintero communicated to Keeble. I mean, exactly. And somehow, he communicated that either there was a gun or he thought there was a gun. Yes. I mean, the audio on the video, we cannot hear what was said. We just know that something was said, and that's at the moment when both officers pull out their guns and the situation escalates into what I think was an arrest at that point. Everybody keeps changing their mind about when the arrest was. You and them both, anyway. I believe we've been consistent, but I certainly think that it's a very short period of time, and this kind of goes into whether, you know, it's related to the resisting arresting, because there's really only less than 20 seconds between when Officer Keeble orders Mr. Martinez out of the car into the place where he's thrown to the ground. They may not have liked that he didn't move as rapidly as he wanted, but there is not the kind of case where courts have found resisting arrest, at least in the case we have before us in this situation. But by the time he's on the ground, by the time he is put in handcuffs, I think that's clearly the point of the arrest, and at that point, and I don't believe that the government's proved that any significant search has happened before that point. So then the question is, did they have probable cause for a vehicle search, or did they have probable cause to arrest Mr. Martinez for something and then do a proper search incident to arrest in connection with that arrest? So the problem with both of those things, as I pointed out in the briefs, is for the automobile search, the government just throws out a couple of California gun statutes and says, oh, there must be probable cause. And similarly for search incident to arrest, they just throw out, oh, there's this thing saying you can't resist officers, and there's also reckless driving, there must be probable cause. And as I explained in the briefs, you can't do a proper probable cause analysis without knowing what the statutes actually say and what the elements are. That's a fundamental... I know, but that's easy. You look at them. And the problem with the gun issue is that we do have foster, which seems to say that there is probable cause on guns, at least now, until somebody decides that it's legal to carry the guns. Well, but I would say the government hasn't met the burden on this record to show, even in this situation, that there was some crime there was probable cause of. Because plainly, plainly the law is not that no person can have a gun in a car at any time for any reason. Lawful gun owners certainly have a way that when they go to the driving range, when they go hunting, when they go to jobs that require them to have a gun, they are able to move their guns from one place to another. What the exact rules are for doing that, we don't know because the government didn't do the work they were supposed to do to establish what these things actually prohibit, and then whether the circumstances... Can I ask you about the inventory search? It wasn't hypothetically. They did do an inventory search. But whether that is... To me, that may be the hardest problem for you, if the stop was valid to begin with. Yes. Well, I think the primary flaw with that is that, as you said, we don't look at the inventory search that they purportedly did after all this went down. Because it's an inevitable discovery issue, the question is, if the constitutional violations that took place that require imposition of the exclusionary rule, if that didn't happen, then what might have happened to lead to inevitable discovery? No. The question is, if there were no constitutional violations with regard to the stop on the arrest, then was the inevitable discovery valid? Right. And so the first question is, if no violations occurred, would he even have been arrested? And the government never put forth any kind of declaration, any kind of theory that said, here's why in the course of ordinary procedures, if this had happened, and if we had not illegally patted him down, if we had not anyway, for X, Y, and Z, then they'd have to go on and say, and then because of very specific characteristics of this location, we couldn't leave the car, therefore, pursuant to ordinary procedures, we would have impounded it. Then go into detail about how the ordinary inventory... I see your problem is that there's no declaration saying that is how you're saying. They're just arguing in the record, but they don't have any officer explaining that? I think, yes, I think consistent with the way this entire case was litigated by the government below... Was it in part your client as well? I mean, you didn't dispute the facts below, right? I mean, you didn't ask for evidence you were hearing. No, no. We rightfully submitted on the inadequate record that the government produced and made the arguments that the government had not met its burden given the records that it produced. What about the fact that the district court didn't make any findings? Should we remand for findings? Particularly, I'll tell you the piece that I was most concerned about, which is you can't really figure out from the, or you can definitively figure out from the video when the search of the car, full search of the car occurred relative to when he was arrested, right? In other words, I had a hard time... It seemed to me that we needed a fact-finding as to whether the... Not whether he was arrested, when he was... When they found the... When they patted him down and found things in his pocket. The government relies on what they found in the pat-down, but it seemed to me that the search of the car was either a coincident with or before the pat-down. I couldn't tell that. So do we need a finding on that from the district court? Do you have a position, first of all, as to what the sequence was? Yeah, well, I maintain that given the record, the government's burden, and the things they've waived by not arguing the brief that the court should reverse on this record alone, but to the extent the court comes across anything like that, that it thinks is a finding it needs, I proposed a procedure in the opening brief. The government didn't object to it at all, which is that the court order... Send it back for limited... Hold jurisdiction, order limited... We call it a limited remand. Right, a limited remand, instructing the court to make findings on this existing record. Do you have a position on whether what the record establishes about that? About the timing? Yeah, the timing question. The time of the arrest or the time it was taken out of? The time of the pat-down when they found the material in his pockets, which they then rely on as the reason, as probable cause for the search. I think that the I think that the record shows that... I agree it's ambiguous because it seems like something was taken out of the pockets, or at least felt in the pockets when he was on the ground, but Officer Keeble's report seems clear that he said, I then took him back to my patrol unit, and that's where I found the gun sight and the magazine with bullets. Right, and then the question would be, was the search of the vehicle that found the guns after he found the gun sight and the clip? Correct, and I think that is a little closer question. Clearly, it's because it seems like those things were happening simultaneously, because Officer Keeble... Well, we see him on the video reaching into the compartment, although I'm not sure at that point he's finding the... pulling out the duffel bag that has the gun in it, or that he's reaching under the seat and Not what Kintero does, but what Keeble does to the pat-down. Why is it unconstitutional? Well, because I think that even if it could be characterized as a Terry frisk for weapons, there was no reasonable suspicion to believe at that time he was armed and dangerous, which are two separate requirements, contrary to what the government says. But... And you're saying it's not enough that he's been driving at almost 100 miles an hour, and that he has an empty holster, and that he seems, I won't say terribly uncooperative, but he seems... He's not your normal person in a traffic stop. He refuses to open the door. He says the window won't go down. I mean, this is not a normal stop of a normal person, and so you're saying that's just not enough to justify a pat-down? Yes. I think that any conclusion that there was a reasonable suspicion to even believe there was a gun, part one, is a hunch. But then... Well, why is that more than a hunch? I mean, the officer is, I think, saying, here's somebody who has an empty holster, who's been driving at almost 100 miles an hour, why is it not at least a reasonable suspicion that he took the gun out of the holster and concealed it somewhere so that it would not be visible, and therefore that he would not... You know, I mean, why is that not at least a reasonable suspicion? We're not, at this point, talking probable cause. Right. Right. Right. And I respectfully disagree. I don't think that, for example, the fact that he was committing a traffic violation right before that... But this is not just your ordinary traffic violation. Well, I... Almost 100 miles an hour on the freeway at night is not your ordinary traffic violation. On L.A. freeways, it seems to be the norm, speeds of that kind, so I would say... Well, no, he's aggressively... He's passing, weaving, come on. Well, that's, again, where we get back to the flaws in the government's case. There's a line in Officer Keeble's report referring to aggressive lane changes, something he does... The government didn't say, well, explain this in your... Provide more details in your declaration. Well, what's necessary to explain? I understand aggressive lane changing and somebody who's going almost 100 miles an hour. I won't say I see it every day, and my normal driving is on Northern California freeways. It has, I think, become more frequent somehow post-COVID or during COVID, but this is not your normal driver who's just tooling down the freeway at a high speed. Okay. I still don't think that however the driving can be characterized would then make the likelihood of there being a gun more or less likely. If there's a different question, I didn't see you argue it, and I don't actually know the answer to it. At the time he does the frisk that discovers the red dot sight and the ammunition, he's in handcuffs. I don't know that he's dangerous at that point, even if he has a weapon in his pocket. Does that change the analysis as to whether or not he can do a frisk? You did not make this argument. No. I guess my argument is he was under arrest at that time anyway, but to the extent that he was not, to the extent that it was still a permissible escalated but permissible carry stop for frisking. Again, I think there's still some absent information in the record about what the officer felt and whether or not it could pull things out of the pocket. For example, the laser sight, is that something that could be considered a weapon that would allow it to be pulled out during a frisk that is really only supposed to be for weapons? Same thing with a gun magazine. I'm not sure whether that's something that can be taken out when- Well, at least he could take it out to see what it was. He didn't know whether it was a magazine or a gun until he took it out. No? Presumably it was a hard metal thing in his pocket. Right. I guess, again, details from the officer are important because if you had the officer saying, I felt something, I didn't know what it was and that's why I had to pull it out, that's the kind of thing I think is necessary for the government to meet their burden in these kinds of cases. I think you've exceeded your time because we had a lot of questions, but you get a minute for rebuttal. Good morning, your honors. May it please the court. Courtney Williams on behalf of the United States. First, there was reasonable suspicion that the defendant was both armed and dangerous to support the Terry frisk. Once they conducted the pat down, they found a loaded magazine and a red dot laser attachment in his pocket. That alone is enough to support count one, the felon in possession charge in this case. Yes, but it wasn't enough at that point because they didn't know he was a felon. At that point, they didn't know that he was a felon, but it still supports the felon in possession charge because he was a felon and he was not allowed to be in possession of ammunition. I know, but what does that have to do with probable cause? Nothing. So, it doesn't have to deal with the probable cause, but I'm saying it supports the conviction in this particular case. We're not worried about the conviction. We're worried about the suppression. Right. So, that's the first. There was reasonable suspicion that he was armed and dangerous for the pat down. Can you be more specific about that? When he was, he was now, at the time of the frisk, he was out of the car and he was handcuffed on his stomach, right? So, you keep saying in your brief that, you know, there was good reason to believe that he had taken the car, a gun out of his holster and hidden it in the car, but if it was in the car, then it wasn't on him. So, what was the basis for the suspicion that he then, when he was frisked, was armed? So, there were multiple facts in this particular case that, based on the totality of the evidence, that he was armed and dangerous. When he was out of the car, not when he was in the car, but when he was out of the car. So, but when he was, so what we know is that officers should be allowed to conduct their traffic stops without fear of harm. And so, when he was in the car, that's when the officers saw the holster on the defendant's hip. They saw the bulletproof vest. And then, he was driving 100 miles in the HOV lane, switching lanes aggressively. He refused to open the door. He refused to keep his hands on the ceiling. When asked to step out of the vehicle, he refused multiple times and said he was not going to do that, so much so that he had to be forcibly removed from the vehicle and placed on the ground while he was trying to make a phone call. But the frisk only occurred after all that, right? Yeah. Well, his frisk... So, why, at that point, then, was there reason to believe that he was armed and dangerous, when he was out of the car, on the ground, and handcuffed? So, the frisk started, I would say, contemporaneous to him being placed in handcuffs. And at that point, there's still... Well, with the frisk that produces the evidence, he's now at the back of the patrol car, and he's been handcuffed now for quite a while, maybe a couple minutes. So, the frisk starts... In the video, you can see that the frisk starts when the defendant is being pulled out of the vehicle and placed on the ground. But the frisk that discovers the sight and the ammunition is later. There are two frisks, as I can see. I mean, because the second frisk that actually discovers is not on the body cam that we get. So, well, the second frisk is not on the body camera footage. But the first frisk, when he's pulled out of the vehicle and placed on the ground, the officers do frisk him and feel a laser sight attachment and a loaded magazine. So, the question is, what is the reasonable suspicion that he is armed then, as opposed to the gun? In your brief, you spend a lot of time saying, well, he probably hid the gun in the car. Well, if he hid the gun in the car, then when he got out of the car, he didn't have it. So, what is the basis for thinking that when he was taken out of the car, he had a gun or he was armed? So, the basis to believe that even out of the car, even in handcuffs, the totality of the And while interacting with the defendant, officers, what the case law says is officers are allowed or should be allowed to interact with defendants without fear of harm. And so, even if... So, I disagree with the characterization that the frisk happened after he was in handcuffs. All right. Even if it was before he was handcuffed, when he was out of the car. He wasn't in the car. But even out of the car, he could still have a weapon in his pocket. And officers are still interacting with the defendant at that point. And it's still necessary to know. The short answer, which is not an unreasonable answer, is he could have had a gun in his pocket. He could have been... Instead of hiding it in the car, he could have hidden it in his pocket. Yes, Your Honor. That's precisely the government's point. But also, what we know is that once they found... Once they... Also, they found the loaded magazine in the laser sight attachment in his pocket. That's not the only thing they found. There was also probable cause to search the defendant's car under the automobile exception for illegally stored firearms in violation of California Penal Code 25-400, Section A-1, carrying a concealed weapon, and California Penal Code 25-850-A, carrying a loaded firearm in a public place.  What was the basis for the officer's arrest? Was it the speeding, resisting arrest, or something else? So, what the officers cite to as the basis of their arrest was California Penal Code 148, the resisting and obstructing a peace officer while attempting to effectuate his duties. And that's what they put placed in their police report. And so... There wasn't actually that much resistance. He refused to get out of the car. That was about as much resistance as I could see. Well, so there was a number of things that the defendant in this particular case resisted. So, when the officers initially did the stop, he refused to open the door. And then once they located or observed, Officer Quintero observed the holster on the defendant's hip and saw the bulletproof vest, he refused to keep his hands on the ceiling. And then... I saw that. It took a while, but he had his hands up. And Officer Keeble said, on the ceiling, on the ceiling. And then I couldn't tell at what point they got to the ceiling, but it wasn't as though he kept his hands in his lap. I mean, that's true, but he was still being noncompliant. And then at the point where the Officer Keeble asked him to step out of the car, again, I disagree with opposing counsel's characterizations. It wasn't a momentary delay. He said multiple times, no, I'm not doing that. No, I'm not getting out of the car. No. And then Officer Keeble had to even say, listen, I'm not going to ask you again. I'm telling you. And he had to put his firearm away and forcibly remove the defendant from the car. And what we know is that when defendants obstruct law enforcement officers while they're effectuating their duty during a traffic stop, that that is in violation of California Penal Code 148. And so he could be lawfully arrested in this particular case for that content. So as to the search, you're going to have three bases of the car. One is a probable cause arrest, a public court search. For the automobile exceptions, do you need probable cause? Yes. All right. So what's the probable cause? The probable cause is the totality of the circumstances. Well, that's not an answer. All right. What are the circumstances? So the circumstances are the empty holster on the defendant's hip, the bulletproof vest, all reasons to believe those are firearm accessories that are only used to carry firearms. If we were talking about accessories that had a dual purpose, I think we'd be having a different conversation. But what we see here is the officers see two firearm accessories in the passenger compartment. The defendant was speeding. The defendant was aggressively changing lanes. The officers believe that he was intoxicated. He failed to- Well, they didn't have much basis for that, actually. And I don't know what he intoxicated has to do with whether he had a gun anyway. So let's back that one out. What else? I mean, well, it shows that the defendant had reckless conduct. And that's cause for concern. It was late at night- Cause for concern, but it's a cause to believe he had a gun. It is cause to believe that he had a gun. And it's cause to believe that he had a gun illegally stored or he was transporting illegal firearms in- Enough for probable cause. For probable cause. Without what was found in his pocket. Without- independently of what was found in his pocket, we believe that the totality of those- Well, that's not how you argued it in your brief. In your brief, you argued it- I mean, this is what confused me. I mean, you seem to be relying on what was found in his pocket. Once you have what was found in his pocket, I think you would probably do a probable cause. But the sequence seems possibly off. And that leads to this question of whether we should re-manage the district court. Well, to clarify, I apologize if the brief was confusing. So what we intended to argue in our brief is that there was a completely separate basis to believe that the defendant had firearms illegally stored or being transported in his car independent of what was found in his pocket. But once officers found what was in his pocket, that put it completely over the line in terms of probable cause. But when was the search? Before or after they found what was in his pocket? The search happened in the patrol car. The problem- and I understand what the court has some confusion. The problem is two officers working in conjunction and simultaneously. And so I think that is why we- that's why we briefed our arguments the way that we did is because there are two different independent bases. And when you have the officers working, you know, in conjunction, it does get a little unclear of what happened first. But what we're saying is it doesn't matter. Your time is running, so let me ask you this. Would you oppose a re-man to have the district judge do what he is actually required to do under Rule 12 and said he would do but didn't do? So here's why I don't believe that a re-man is necessary. So what Rule 12 actually says is that when there are issues and facts in dispute, the court must make essential fact findings on the record. What we have here is the defense attorney, when given the opportunity to question the officers and have a hearing, said there were no issues in dispute. So at the point where defense counsel is saying that I've watched the video, I've read the government's declarations, I have no issues with what was- But the purpose of the fact findings is so that we can review things without making fact findings ourselves. And since none of us, you or- neither defense counsel nor you nor us seems to be able to say that it's clear without any finding of fact in what order these things happened, don't we need- either we're going to find the fact or whatever the district- whatever the defense counsel may say, if we think it matters, then we can find the fact. I understand, Your Honor, but I- it's just at the point where defense counsel is saying that there's no issues in dispute, the only thing left for the judge to do is to make a legal determination. And in this case- But that might be useful to us in the sense of, you know, do we- do we have something to defer to? Because if we have a factual finding that we then defer to it? Let me ask you this. Your opponent has said, if we remand, he'd like it to be a remand on a closed record. Do you think that it should be on a closed record? Or that you should have an opportunity to introduce, for example, the body cam of Officer Contero or the testimony of Officer Contero? I believe that that would be appropriate. Why would that be appropriate? You had your shot already once. Well, in this particular case, I'm not sure there was body-worn camera footage from Officer Contero, so I'm not sure that we would introduce that. But what- He might be available to testify. He- yes, he would potentially be available to testify. Sometimes I- I'm not prejudging this case in particular. Sometimes there's a reason for somebody not to introduce evidence that could be sort of on their side, but perhaps wouldn't be on their side. I'm not sure that Officer Contero's body cam, if he had it on, is actually going to be helpful to you. Might be hurtful, who knows? Yeah, I mean, I'm not sure there was body-worn camera from Officer Contero, so I can't really speak to that point. But what I can say is that even if this court takes issue with the automobile search, the Terry pat-down was permissible based on the totality of circumstances that this defendant was armed and dangerous. To my mind, it may depend on when the pat-down takes place. I mean, if he is handcuffed and no longer dangerous, he's outside the car, and the first serious pat-down is the one that takes place by the patrol car after a sort of a preliminary pat-down when he's being handcuffed, I might need to know more. I understand, Your Honor, but I respectfully disagree. I don't believe that just because a defendant is handcuffed, that necessarily means that he's not a danger to the officer, and the officer still would not need to know if he was armed at that point. Again, maybe I need some more fact-finding from the district court, but intuitively, and in most cases, it would seem to me that if someone is handcuffed, and the question is whether he can reach into his pocket, pull out a weapon, and injure the officer, the fact that he's handcuffed is pretty conclusive evidence that he won't be able to do that. Well, I do believe that there's case law to support that sometimes, even when handcuffed, defendants can sometimes escape handcuffs or still be a physical threat to an officer, so I'm not sure I agree at that point, but I do believe that, you know, even if the search of the vehicle, the court finds problematic, that the terry pat down was supported by reasonable suspicion that he was armed and dangerous, and that you can affirm on the first count, felon in possession. Thank you. I see my time has run. Thank you. Is there any more questions from the court? I did have one more question. If we didn't think there was— if we thought that we could not, on the current, without the facts, findings, determine whether there was probable cause for the search, that would mean that both the— that the automobile exception thing wouldn't work, and the search pending arrest seems to have a similar problem to one that Judge Fletcher has been asking about. It's hard to explain why you were searching the car, incident to the arrest, when he's out of the car and he can't reach anything in the car. So that seems— and I know you can search for evidence, but your argument that they were searching for evidence of resisting arrest is pretty weak. So then—so then, to me, then it comes down to the inventory search question, and—or the hypothetical inventory search. So if you could briefly explain why you think that's viable. I mean, the problem with that is that it, A, obviously does depend on there being a valid arrest, first of all, which maybe there was, depending on the reasonable suspicion thing. But then, how can you know what would have happened if there had been an arrest but not a search? In other words, if they had arrested him for resisting arrest but hadn't, for example, done the search of his pocket and so on, would they—how do we know that they would have done an inventory search? So that—that is just one of our alternative paths to affirm, and so I will— It may end up being your best one. That's what I'm saying. I think it may be your best one. Well, I believe that the video in this particular case is clear, that the defendant, after being—having been forcibly removed from the vehicle and placed on the ground and handcuffed, while certainly I'm not arguing that in every case that that equals an arrest, but I think the facts in this particular case, it's clear that that was an arrest, I—it's highly unlikely that the officers would have allowed the defendant to drive off after that point, even if they had not found— And do we have a declaration from— Admittedly, there is no—there is no declaration from the officers— We have no record as to the inventory arrest, other than we have—we do have the actual inventory that they did, but that's all we have. Do we have— Supporting—to support that alternative basis, we do have a declaration from Officer Keeble that, you know, the inventory complied with departmental policy and the community caretaking exception. We don't notably have him saying explicitly, I would have—I would have arrested him and not let him go, but I—again, I think from the video and the facts of this particular case, I think it's clear that he would not have been allowed to get back in his car and drive off after the events that occurred in this case. Okay. Thank you, Your Honors. If I may ask a question to begin, if you assume the officer had probable cause to arrest Mr. Martinez for resisting arrest, or had probable cause for resisting arrest, the inventory search, why wouldn't that be lawful of the car? Well, because I think that the government, as I said, hasn't done what was necessary to establish what the—what that requirement— I mean, the car was parked outside a freeway late at night. It says no parking. I mean, obviously, you would take that car off. You're not going to leave it there for the morning just sitting there. Actually, Your Honor, that's a very good point. That no parking sign is something that was brought up for the first time on appeal— Well, it doesn't—if you—any car outside the freeway, you're not going to leave it overnight, especially now that we know there was a gun in there, so someone can break into the car. You're not going to do that because, you know, the police would be in trouble then for leaving the car in the middle of the night. Well, then that puts the car before the horse. You don't know there's a gun there until— Regardless, you don't see—you don't see police officers leaving a car if they arrest someone out on the freeway out there. Right, but what I'm saying is that it requires more of a record based on assumptions that we have now. I mean, we need— About the— An officer describing the exact circumstances of the road and explaining why it's part of their normal procedure is we would never leave a car like this in this kind of situation. I mean, do we really need that? I mean, that's pretty obvious. You don't leave a car overnight on the freeway out there. I think once we start relieving the government of their burden by saying what's common sense and what should be obvious, I think that that really lessens their burden, I think. And it's not much. They put in a declaration from this officer that was bare bones, saying here's the inventory search that I did, and oh, by the way, I haven't found cars. It's like it wouldn't take too much more for them to put in— Because it's so obvious. I mean, you don't leave a car overnight on the side of the freeway. I mean, that's— Well, it's not actually on the freeway. It's off on a side road. It is. The government, again, not something on the record, but called it a frontage road. So, I mean, again, I think Cervantes is the case this court decided where they said, like, the details matter. The details about what the neighborhood is, what's the parking situation. How does the inevitable discovery exception work? I mean, how inevitable does it have to be and what has to be? It's all hypothetical, so it's extremely bizarre. And I don't actually know what the case law is about whether— I mean, here there would have been some steps. I mean, they would have had to say that, you know, but they did impound the car. That is different because we had another case earlier this week where they tried to do that, but they hadn't actually impounded the car. They did actually impound the car. So we do have some indication of what they would have done, and they did, in fact, do what looks like a— I mean, you haven't challenged the inventory. They actually did, right, for procedural reasons. No, that was all after the fact of them actually— Well, I know, but it would have been some indication of what they would have done if they had done it anyway. So there doesn't seem to be a procedural problem with the inventory. Well, again, I think Your Honor hit the nail on the head, and I'd point to the Garcia case, which I cite at the opening brief at pages, I believe, 40 and 41. That was an attenuation case, but that was another— Once you get into these exceptions to the exclusionary rule, a lot of it is you're in imagination time, you know? Like, what would have— If this didn't happen, what would have happened? And in both the attenuation circumstance and the inevitable discovery stance, it requires the government to come in with pretty good detail saying, here are ordinary procedures. Therefore, if this happened, we almost certainly would have done this, and then the next probable consequence would have been that. And just as in Garcia, where the court said, the government gave us nothing on this that would allow us to, you know, to make the findings we have to have about what would have happened but for the constitutional violation. That's the same situation we have here. Great. Thank you both. I think we've exceeded our time. Thank you both for the helpful argument. Next case to be argued is United States v. Harrell. Thank you.
judges: FLETCHER, BERZON, LEE